UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**JEFFREY BREWINGTON**      **CASE NO. 2:22-CV-01184**

**VERSUS**      **JUDGE JAMES D. CAIN, JR.**

**USA**      **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the Court is a Rule 12(b)(1) Motion to Dismiss (Doc. 17), filed by the defendant, the United States of America, wherein the Government asserts federal sovereign immunity. Plaintiff opposes the motion. Docs. 27, 32. Defendant has replied. Doc. 34.

### I. BACKGROUND

This lawsuit arises from injuries that Plaintiff allegedly sustained on November 21, 2019, from an attack by rival gang members following his assignment at the Federal Correctional Institution in Oakdale, Louisiana ("FCI Oakdale") to general population. Doc. 1, pp. 2–4. According to Plaintiff, he informed the screening officer at FCI Oakdale that he was a member of the Aryan Brotherhood ("AB"). *Id.* at 2. Plaintiff avers that he informed the screening officer that as an AB he should be separated from the Norteños gang. *Id.* After his screening interview, Plaintiff claims he was brought to his cell, at which point he proceeded to the communal area for mealtime where he was attacked by a member of the Norteños. Doc. 25, p. 3. Plaintiff alleges the attacker used razor blades to cause injuries to his face, head, and other parts of his body. *Id.* at 4. On May 3, 2022, Plaintiff filed suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 267 *et seq.*, against

the Government claiming $1,038,292.98 in compensatory damages for pain and suffering, mental anguish, medical expenses, disfigurement, permanent scarring, and lost earning capacity. *Id.* at 3–4.

## II. <u>LEGAL STANDARD</u>

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction. . . ." A court may base its disposition of a motion to dismiss under Rule 12(b)(1) on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US West Communications, Inc.*, 117 F.3d 900 (5th Cir. 1997) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981), *cert. denied,* 454 U.S. 897 (1981)). Courts may consider affidavits and exhibits submitted in connection with a Rule 12(b)(1) motion to dismiss. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). Once challenged with competent proof, the plaintiff must prove by a preponderance of the evidence that the court has subject matter jurisdiction. *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986).

## III.    <u>LAW & ANALYSIS</u>

The United States enjoys sovereign immunity from suit unless it has consented to be sued. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir.1994). The FTCA provides:

> remedy against the United States . . . for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or

omission of any employee of the Government while acting within the scope of his office or employment . . . .

28 U.S.C.A. § 2679(b)(1). Though "[t]he FTCA waives sovereign immunity and permits suit against the United States for monetary claims sounding in state tort law that allege negligent or wrongful acts committed by government employees," *e.g.*, *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021), the FTCA's "waiver, however, is subject to various exceptions which preserve the Government's sovereign immunity," *e.g.*, *id.* In this motion, the Government argues that one of these exceptions applies, *i.e.*, the "discretionary function exception" ("DFE"), 28 U.S.C. § 2680(a). Doc. 17-1, p. 10–11. The DFE provides:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The Fifth Circuit observes that "[t]he [DFE] withdraws the FTCA's waiver of sovereign immunity in situations in which, although a government employee's actions may have been actionable under state tort law, those actions were required by, or were within the discretion committed to, that employee under federal statute, regulation, or policy." *E.g.*, *Dickson*, 11 F.4th at 312. If the DFE applies, the Plaintiff's claim must be dismissed for lack of subject matter jurisdiction. *See Powers v. United States*, 996 F.2d 1121, 1126 (11th Cir.1993).

The "plaintiff has the burden of . . . establishing that the [DFE] does not apply." *Spotts v. United States*, 613 F.3d 559, 569 (5th Cir. 2010) (citing *St. Tammany Par., ex rel.*

*Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 n. 3 (5th Cir. 2009)). To determine whether the DFE applies courts use a two-part test: (1) whether the challenged act involves an element of judgment or choice on the part of the employee; (2) whether the judgment is of the kind that the discretionary function exception was designed to shield. *Dickson*, 11 F.4th at 312 (internal quotations omitted) (quoting *Spotts*, 613 F.3d at 567–68). Under the first part, "[i]f a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary"; however, "if an employee violates a mandatory directive in a federal statute, regulation, or policy, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy." *E.g.*, *id.* (internal quotations omitted) (collecting cases). Under the second part, "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id.* (citing *United States v. Gaubert*, 499 U.S. 315, 324 (1991)). Accordingly, "[i]n making this determination, [courts] do not focus on the subjective intent of the government employee or inquire whether the employee actually weighed social, economic, and political policy considerations before acting. [Courts] focus on the nature of the actions taken and on whether they are susceptible to policy analysis." *Ochran v. United States*, 117 F.3d 495, 500 (11th Cir. 1997) (quoting *Gaubert*, 499 U.S. at 325)). When the first prong to the two-part test is satisfied, courts presume the second prong is satisfied unless the plaintiff can

rebut that presumption showing that "the actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324–25.

Here, the Government argues that "[t]he decision to transfer Plaintiff to FCI Oakdale, and to place him in general population falls squarely within the DFE," which preserves the Government's sovereign immunity. *Id.* at 13. Moreover, the Government argues that the Court lacks subject matter jurisdiction over Plaintiff's FTCA claim because it has not waived its federal sovereign immunity. Doc. 17-1, p. 2. On the other hand, the Plaintiff argues that his complaint alleges violations of Bureau of Prisons ("BOP") policy and procedure and other mandatory directives,[1] which precludes the DFE and thus does not bar his claim under the FTCA. Doc. 27, p. 7–8. Specifically, Plaintiff argues that 18 U.S.C. §§ 4042, 4081, and 28 C.F.R. § 522.21(a) create mandatory rather than discretionary obligations, and therefore render the DFE inapplicable to his claims. Doc. 27, pp. 9–10, 13. Although Plaintiff provides no specific policy or procedure that requires Plaintiff to be separated from the Norteños gang at FCI Oakdale, he claims that he requires an opportunity to conduct discovery to find documents and information, if any, related BOP's policies and internal procedures.[2] *Id.* at 9.

---

[1] 1) BOP staff failed to follow policies and regulations regarding proper inmate screening by placing him in the prison housing unit where he was ultimately attacked by a rival gang; 2) failing to recognize that Mr. Brewington was a member of the Aryan Brotherhood or "AB," even though he informed the SIS office who conducted his initial screening interview that he was an AB member; 3) further failing to recognize that Mr. Brewington was a member of AB despite his prominent tattoos affiliated with AB, and despite that information being accessible in his central inmate file during his screening; 4) failing to recognize that members of the AB needed to be separated from Norteños members, pursuant to BOP policies and regulations; 5) failing to separate Mr. Brewington from Norteños members; 6) failing to safely house Mr. Brewington separately from rival gang members; and 7) failing to prevent Mr. Brewington's attackers from possessing razor blades.

[2] Specifically, Plaintiff argues that such discovery would include BOP and FCI Oakdale procedures, policies, post orders, guidelines, training manuals, protocols, institutional supplements, local procedures, employee standards of conduct, instructions, work assignments, work schedules, policy memoranda, and other directives regarding gang or separation orders. Plaintiff claims he is also entitled to reports, including but not limited to, any

### A. 18 U.S.C. §§ 4042, 4081, and 28 C.F.R. § 522.21(a)

First, United States Code section 4042(a) provides:

(a) In general.—The Bureau of Prisons, under the direction of the Attorney General, shall—

(1) have charge of the management and regulation of all Federal penal and correctional institutions;

(2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;

(3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States . . . .

18 U.S.C.A. § 4042(a). The Fifth Circuit "recogniz[es] that . . . section 4042's mandate to protect prisoners [does not] define a non-discretionary course of action specific enough to render the discretionary function exception inapplicable."[3] *Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. 2005) (citing *Montez v. United States*, 359 F.3d 392, 396 (6th Cir.2004).

Second, United States Code section 4081 governs classification decisions:

The Federal penal and correctional institutions shall be so planned and limited in size as to facilitate the development of an integrated system which will assure the proper classification and segregation of Federal prisoners according to the nature of the offenses committed, the character and mental

---

post-incident reports, summary reports, investigations, statements, reports regarding disciplinary actions, recommendations made, and any other documents made regarding the events surrounding November 21, 2019. Such discovery would allow Plaintiff to determine if, in fact, the BOP employees who screened and placed Plaintiff at his cell location did indeed fail to adhere to any procedures, policies, or directives that would have kept him separate from the Norteños or Nuestra Familia gang members who viciously attacked him.

[3] See also *Rich v. United States*, 811 F.3d 140, 145 (4th Cir. 2015) (stating BOP retains discretion regarding the implementation of Section 4042); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) (Section 4042(a)'s provisions "do not mandate a specific, non-discretionary course of conduct, but rather leave the BOP ample room for judgment."); *Cohen v. United States*, 151 F.3d 1338, 1343 (11th Cir. 1998) ("Section 4042 does not set forth any required nondiscretionary actions."); *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) ("Section 4042 sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates.").

> condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions.

Additionally, placement decisions are governed by Section 3261, which provides:

> The [BOP] may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable.

In *Dickson*, the Fifth Circuit stated that Sections 4081 and 3261

> confer discretion on the BOP to classify prisoners and place them in institutions in accordance with public policy. Thus, decisions regarding the transfers and classifications of prisoners generally fall within the discretionary function exception. The same is generally true for decisions to place a prisoner within the general population of a specific institution.

11 F.4th at 313 (cleaned up) (collecting cases).

Third, Code of Federal Regulations section 522.21(a) states: "Immediately upon an inmate's arrival, staff shall interview the inmate to determine if there are non-medical reasons for housing the inmate away from the general population. Staff shall evaluate both the general physical appearance and emotional condition of the inmate." Plaintiff argues that Section 522.21(a) requires that institutional staff "ensure that a newly arrived inmate is cleared by the Medical Department and provided a social interview by staff before assignment to the general population." Doc. 27, p. 9–10. Plaintiff asserts that this directive is not discretionary but compulsory, and, consequently, there is no waiver of sovereign immunity. *Id.* at 10. Plaintiff claims that BOP fell short of adherence to Section 522.21(a) by not conducting a sufficient interview to determine Plaintiffs affiliation with AB. *Id.* The Government responds that 28 C.F.R. § 522.21(a) and related BOP Program Statement

5290.15 impart the BOP with discretion to place or house inmates within the facility. Doc. 34, p. 2. For the social interview, Program Statement 5290.15 required the screening officer to review Plaintiff's SENTRY file in the BOP database in order to determine whether he should have been separated from others in the general population.[4] The screening officer's unsworn declaration reveals that, prior to Plaintiff's arrival, she reviewed Plaintiff's available records,[5] which indicated that Plaintiff had no order of separation for conflicts with any inmate at FCI Oakdale. Doc. 17-8, p. 2. Also, the screening officer found that Plaintiff was not assigned to a Security Threat Group or Disruptive Group, which indicated that he was not a verified member or associate of the California AB. *Id.* According to the screening officer, once Plaintiff arrived at FCI Oakdale, Plaintiff was informed that the yard was a Norteños yard, at which point the Plaintiff conveyed to the screening officer that there was no reason he could not walk the yard. *Id.* The screening officer noted that there were many other non-California AB inmates on the yard at Oakdale FCI. *Id.* Thus, based on the information before her after conducting the social interview, it was the screening officer's judgment decision that Plaintiff should be housed in general population.[6] Accordingly, 28 C.F.R. § 522.21(a) and related BOP Program Statement 5290.15 are discretionary directives.

---

[4] Federal Bureau of Prisons, Intake Screening (Mar. 30, 2009), https://www.bop.gov/policy/progstat/5290_015.pdf.
[5] In the SENTRY and TRUINTEL databases maintained by BOP.
[6] A district court in Pennsylvania stated that "[Section 522.21(a) gives] prison officials a great deal of discretion in determining whether new inmates should be housed with the general population. The regulations direct prison officials to "evaluate" the new inmate's physical appearance and emotional condition in making this determination. The regulations neither dictate results in particular cases nor specify particular factors that prison officials must employ in determining whether to place a new inmate in the general population. Prison officials must make this decision on a case-by-case basis. The decision is clearly one that involves judgment or choice." *Green v. United States*, No. CIV.A. 94-5706, 1995 WL 574495, at *4 (E.D. Pa. Sept. 22, 1995).

In summary, the Court finds that 18 U.S.C. §§ 4042 and 4081, and 28 C.F.R. § 522.21(a) provided the BOP with discretion to decide whether to house Plaintiff in general population at FCI Oakdale because these statutes and regulations require BOP officials to consider numerous factors on a case-by-case basis when making its placement determination. *See Cohen*, 151 F.3d 1343 (finding Sections 4042, 4081, 3621 do not mandate any nondiscretionary conduct for BOP to follow in classifying and placing prisoners). The first prong of the two-part test is met.

Under the second prong, the question is whether the Government's discretion was of the type that the DFE was designed to shield. *Dickson*, 11 F.4th at 312. Here, Plaintiff argues that the Government has not articulated any public policy consideration but that the Government incorrectly presumes the prison official's acts are grounded in policy when exercising their discretion. Doc. 27, p. 11. According to the United States Supreme Court, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324. Moreover, Plaintiff, not the Government, has the "burden to demonstrate that the discretionary function exception does not apply to his claim." *Dickson*, 11 F.4th at 313 (citing *St. Tammany Parish*, 556 F.3d at 315). Plaintiff "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. 315, 324–25. Plaintiff has alleged no facts, for example, that suggest the BOP's case-by-case decision to house Plaintiff in general population is outside the scope of the DFE. *See, e.g., Buchanan*

*v. United States*, 915 F.2d 969, 972 (5th Cir. 1990). Furthermore, the screening officer's unsworn declaration shows that Plaintiff's placement in general population was determined by information derived from the SENTRY and TRUINTEL databases as well as the screening interview, which considers "factors such as available resources, proper classification of inmates, and appropriate security levels [that] are 'inherently grounded in social, political, and economic policy.'" *See Rich*, 811 F.3d at 146 (quoting *Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 796 (8th Cir. 1998)).

Additionally, the Government claims that Plaintiff falsely asserted affiliation with the California AB after his interview with the screening officer. Doc. 17-1, p. 8. To this point, Plaintiff does not dispute the screening officer's unsworn declaration that Plaintiff failed to inform her that he was a member of the California AB. Doc. 34, p. 7. Furthermore, Plaintiff signed a form on February 24, 2022, stating he has been affiliated with the Michigan AB since 2007. Doc. 17-4, p. 7. Even if Plaintiff genuinely was a member of the California AB, a determination to place in the Special Housing Unit would be discretionary unless Plaintiff could show that a specific nondiscretionary policy or directive stated otherwise. Ultimately, Plaintiff has failed to demonstrate that BOP's decision pursuant to 18 U.S.C. §§ 4042, 4081, and 28 C.F.R. § 522.21(a) placing him in general population was nondiscretionary or discretionary but not of a type that the DFE was designed to shield. *See Dickson*, 11 F.4th at 312.

### B. Plaintiff's request for additional discovery

Additionally, Plaintiff asks the Court to deny the instant motion in lieu of additional discovery that may produce a policy needed to overcome its burden to demonstrate that the

DFE does not apply to his claim. For such a request, Plaintiff "bears the burden of showing its necessity." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009). This means, Plaintiff must allege "specific facts crucial to immunity which demonstrate[] a need for discovery." *Freeman*, 556 F.3d at 342 (internal quotations omitted) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 852 (5th Cir.2000)). Plaintiff "is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Id.* (citing *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

> Here, Plaintiff argues that Special Investigative Agent David Deville
>
> stated that in his experience, Norteños and California AB were kept separate in BOP prisons because of ongoing conflicts between the two groups. Essentially, it appears that there was an unwritten policy to keep the two groups separate—in other words, that despite the absence of a written policy, there nonetheless would be no element of judgment or choice in separating inmates who members of those groups, as required by the [DFE].

Doc. 32, p. 2. On the other hand, the Government argues that at the time of Plaintiff's screening at FCI Oakdale, there were only two exceptions to the general rule of discretionary assignment on inmates: "The Mexican Mafia/Sureños' ongoing conflict with the Texas Syndicate; and Barrio Azteca's ongoing conflict with the Border Brothers." Doc. 17-1, p. 3; 17-3; 17-4, p. 2.

The Court finds that additional discovery in this matter is unnecessary because any mandatory directive or policy that Plaintiff not be housed with Norteños would be publicly available at BOP's website, *e.g.*, "National STG conflicts in BOP," doc. 17-3, or available to Plaintiff through a Freedom of Information Act request at www.foia.gov. *See Freeman*,

556 F.3d at 342. Therefore, Plaintiff has not met his burden to demonstrate he is entitled to additional discover to defeat the Government's Rule 12(b)(1) motion to dismiss.

### IV. CONCLUSION

For the reasons above, the Court will grant the Government's Rule 12(b)(1) Motion to Dismiss (Doc. 17).

**THUS DONE AND SIGNED** in Chambers on this 6th day of June 2023.

*[signature]*

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE